United States District Court
District of Massachusetts

_____
                                )
**Pesmel North America, LLC,**      )
      **Plaintiff,**              )
                                )
        **v.**                     )     **Civil Action No.**
                                )     **10-10450-NMG**
**Caraustar Industries, Inc.,**     )
      **Defendant.**              )
_____ )

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises from an alleged breach of contract by defendant Carauster Mill Group, Inc. ("Caraustar").[1] Pending before this Court is the defendant's motion to dismiss the case for lack of personal jurisdiction or, in the alternative, for transfer of venue to the United States District Court for the Northern District of Georgia.

I.   **Background**

    A.   **Factual Background**

Caraustar manufactures recycled paperboard products and is an Ohio corporation with its corporate headquarters (and three of its seven facilities) located in Georgia. The plaintiff Pesmel North America, LLC ("Pesmel") is a Massachusetts limited

_____

[1] The defendant asserts that the proper party defendant is Caraustar Mill Group, Inc. but the plaintiff denies that the issue has any bearing on the pending motions.

liability company with its usual place of business (and sole
facility) in Massachusetts.  Although Pesmel is a subsidiary of
Pesmel OY, a Finnish corporation, they are distinct companies
with separate facilities, finances, personnel and functions.
Pesmel manufactures, delivers, installs and services material
handling systems.

     In 2007, Caraustar entered into an agreement to purchase
from Pesmel an automated roll handling system ("the Agreement")
for installation at Caraustar's Sweetwater Paperboard facility in
Austell, Georgia.  The total price was $1,732,000 to be paid in
installments based on contractual milestones in the delivery,
installation and completion of the system.  Caraustar made the
first five payments, amounting to 70% of the total price.  The
parties also agreed to an ongoing consignment program to supply
spare parts for the installed system.

     Pesmel alleges that, despite its successful installation of
the equipment and achievement of the next milestone, Caraustar
1) refused to make the sixth scheduled payment, 2) tried to
"terminate" its contract and 3) by so doing, retain the
equipment, avoid making the remaining three payments and prevent
Pesmel from remaining on site to resolve the technical issues
that allegedly gave rise to its termination decision.  Caraustar
points to the plaintiff's alleged refusal to perform certain
contracted-for services in a timely manner as the source of the

disagreement.

**B.   Procedural History**

In February, 2010, Pesmel filed a complaint against
Caraustar in the Massachusetts Superior Court Department for
Middlesex County alleging breach of contract, unjust enrichment
and conversion.  The following month, Caraustar removed the case
to this Court pursuant to 28 U.S.C. §§ 1441 and 1446 and, shortly
thereafter, filed the pending motion to dismiss for lack of
personal jurisdiction over the defendant or, in the alternative,
to transfer venue to the United States Court for the Northern
District of Georgia.  Caraustar argues that its contacts were
directed toward Pesmel OY, not the plaintiff and that any
contacts with Pesmel were insufficient to subject it to personal
jurisdiction in Massachusetts.

**II.   Analysis**

**A.   Personal Jurisdiction in Massachusetts**

In the complaint, the plaintiff merely states: "This Court
has personal jurisdiction over defendant pursuant to M.G.L. c.
223A, § 3."  The defendant argues that the plaintiff has failed
to proffer any factual basis for the imposition of either general
or specific personal jurisdiction over the defendant.

On a motion to dismiss for lack of personal jurisdiction,
the plaintiff bears the burden of demonstrating that jurisdiction
is 1) statutorily authorized and 2) consistent with the Due

Process Clause of the United States Constitution.  <u>Astro-Med, Inc.</u> v. <u>Nihon Kohden Am., Inc.</u>, 591 F.3d 1, 8 (1st Cir. 2009). Because the Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3, reaches to the full extent that the Constitution allows, the Court may proceed directly to the Constitutional analysis.  <u>See</u> <u>Tatro</u> v. <u>Manor Care, Inc.</u>, 625 N.E.2d 549, 553 (Mass. 1994); <u>Sawtelle</u> v. <u>Farrell</u>, 70 F.3d 1381, 1388 (1st Cir. 1995).  Although the long-arm statute "asserts jurisdiction over the person to the constitutional limit only when some basis for jurisdiction enumerated in the statute has been established," <u>Good Hope Indus., Inc.</u> v. <u>Ryder Scott Co.</u>, 389 N.E.2d 76, 80 (Mass. 1979), the transacting business clause (which the defendant assumes the plaintiff would assert) is satisfied here. <u>See</u> <u>BCCTC Assoc., Inc.</u> v. <u>Summerdale/AAHFI, L.P.</u>, 656 F. Supp. 2d 208, 215 (D. Mass. 2009) (clause may be satisfied by contacts relating to formation and operation of contract); <u>Deyesso</u> v. <u>Kaizen Mgmt., LLC</u>, 2008 WL 5101269, at *3 (D. Mass. Nov. 25, 2008) (clause satisfied by "most incidental of purposeful contacts").

The Court may conduct a prima facie review of the jurisdictional facts to determine whether the plaintiff has met its burden of showing, by a preponderance of the evidence, that personal jurisdiction over the defendant exists.  <u>See</u> <u>Adams</u> v. <u>Adams</u>, 601 F.3d 1, 4 (1st Cir. 2010).  The Court accepts properly

-4-

supported proffers of evidence by the plaintiff as true and adds to the mix facts put forward by the defendant, to the extent they are uncontradicted.  Newman v. European Aeronautic Defence & Space Co. Eads N.V., 700 F. Supp. 2d 156, 159 (D. Mass. 2010).

As a threshold matter, there are two forms of personal jurisdiction: general and specific.  Pritzker v. Yari, 42 F.3d 53, 59 (1st Cir. 1994).  General jurisdiction exists when the defendant has engaged in "continuous and systematic activity," unrelated to the suit, in the forum state.  Id. at 60.  Specific jurisdiction is narrower and exists where the plaintiff's cause of action arises from or relates to the defendant's contacts with the forum state.  Id.

### 1.  General Personal Jurisdiction

For general jurisdiction to exist, the defendant must engage in a "continuous and systematic" pursuit of general business activities in the forum state, such as marketing or shipping products, performing services or maintaining one or more offices. Cossaboon v. Me. Med. Ctr., 600 F.3d 25, 32 (1st Cir. 2010). The Court considers "all of a defendant's contacts with the forum state prior to the filing of the lawsuit."  Id. at 29 (citations omitted).

Pesmel does not and cannot allege that Caraustar has engaged in "continuous and systematic contacts" with Massachusetts unrelated to this litigation.  Caraustar is incorporated in Ohio

and its corporate headquarters are located in Georgia. Carauster does not: 1) own, lease or occupy any real property in Massachusetts, 2) have any facilities or sales offices in Massachusetts, 3) have any bank accounts in Massachusetts or 4) pay any taxes in Massachusetts. Therefore, general personal jurisdiction is lacking, and the Court must consider whether there is specific personal jurisdiction over the defendant.

### 2.   Specific Personal Jurisdiction

Due Process requires that the defendant have "minimum contacts" with the forum state such that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). The First Circuit employs a tripartite analysis to determine whether specific jurisdiction is appropriate: 1) whether the claims arise out of or are related to the defendant's in-state activities, 2) whether the defendant has purposefully availed itself of the laws of the forum state and 3) whether the exercise of jurisdiction is reasonable under the circumstances. See, e.g., Platten v. HG Bermuda Exempted, Ltd., 437 F.3d 118, 135 (1st Cir. 2006); Sawtelle, 70 F.3d at 1389.

### a.   Relatedness

The "relatedness" test is a "flexible, relaxed" standard that focuses on the nexus between the plaintiff's claim and the defendant's contacts with the forum state. Astro-Med, 591 F.3d

at 9.  The defendant need not be present in the forum state to
conduct activity or cause injury therein.  See id. at 10.  A
contract, by itself, cannot automatically establish minimum
contacts, but "prior negotiations and contemplated future
consequences," as well as the "parties' actual course of
dealing," must be considered in evaluating minimum contacts.
Burger King Corp. v. Rudzewicz, 471 U.S. 462, 479 (1985).  The
Court asks "whether the defendant's activity in the forum state
was instrumental either in the formation of the contract or in
its breach."  Adams, 601 F.3d at 6.

The parties agree that no in-person negotiations took place
in Massachusetts.  The lack of physical presence in Massachusetts
is not determinative, however, because "widespread use of the
telephone and the mail has commonly replaced physical presence in
negotiations."  Haddad v. Taylor, 588 N.E.2d 1375, 1377 (Mass.
App. Ct. 1992) (citing Good Hope Indus., Inc. v. Ryder Scott Co.,
389 N.E.2d 76 (Mass. 1979) (finding personal jurisdiction where
defendant sent periodic reports and monthly invoices to
plaintiff's office in Massachusetts for over one year, frequently
called plaintiff and regularly accepted payments from plaintiff's
bank)).  The Agreement was negotiated by Tim Aijo ("Aijo"),
Pesmel's Senior Vice President.  Caraustar then faxed the initial
contract to Pesmel at its Massachusetts fax number, requesting
that Aijo sign and return it.  The Agreement is signed by "Mr.

-7-

Timo Aiji [sic], Pemel [sic], USA."  The contract is between
Caraustar and Pesmel, not Pesmel OY.

In addition to the faxed contract, the defendant engaged in
other contacts with Massachusetts.  The headings (or logos) of
numerous documents clearly indicated "Pesmel North America, LLC"
and invoices directed Caraustar to send payments to "Pesmel North
America, LLC. / P.O. Box 289 / Ashland, MA 01721."  The defendant
sent not only payments to that address (by mailing checks) but
also purchase orders and a letter "terminating" the Agreement.
Cf. United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 622 (1st
Cir. 2001) (implying letter sent to forum state could be
considered instrumental to alleged breach of contract).  The
quotation for the related spare parts consignment program
included that same address, as well as Massachusetts telephone
and fax numbers, although Caraustar claims that Pesmel's
personnel had telephone and fax numbers with Georgia area codes.

Furthermore, Pesmel's facility and personnel in
Massachusetts were used in preparing, arranging and mobilizing
the parts, equipment, tools and workers needed to install the
system in Georgia.  It was also engaged in manufacturing and
modifying parts of the system and operating the spare parts
program.  From Massachusetts to Georgia, Pesmel sent tools,
equipment and twelve of the roughly fifteen workers needed to
install the system there.

The plaintiff states that its employees were "most likely in Massachusetts" when receiving "numerous" telephone calls or emails from the defendant during the course of the contractual relationship but does not offer evidence that its employees were, in fact, located in Massachusetts at the time of those communications.  Although the Court could disregard such unsupported allegations in its analysis, see Adams, 601 F.3d at 5 n.8, the defendant here admits that it communicated with Pesmel via fax, email and telephone.  Such repeated communications with Pesmel and its employees constitute evidence of a jurisdictional contact directed into the forum state.  See Burger King, 471 U.S. at 476; Workgroup Tech. Corp. v. MGM Grand Hotel, LLC, 246 F. Supp. 2d 102, 113 (D. Mass. 2003) (finding four calls, five emails and three faxes to the plaintiff in Massachusetts for the purpose of negotiating the terms of the contract were "unquestionably jurisdictional contacts for the purpose of the constitutional analysis").

In sum, the contacts here are sufficient to satisfy the relatedness prong.  See EIQnetworks, Inc. v. BHI Advanced Internet Solutions, Inc., --- F. Supp. 2d ----, 2010 WL 2989997, *6-7 (D. Mass. July 29, 2010) (finding relatedness satisfied by defendant's "more than minimal" contacts with plaintiff in Massachusetts via telephone, email and fax to negotiate terms of agreement, continued communication with respect to payments and

technical support and defendant's failure to make payments to
plaintiff in Massachusetts).

### b.    Purposeful Availment

To satisfy the second requirement,

> the defendant's in-state contacts must represent a
> purposeful availment of the privilege of conducting
> activities in the forum state, thereby invoking the
> benefits and protections of that state's laws.

Astro-Med, 591 F.3d at 10.  The purposeful availment factor
focuses on voluntariness and foreseeability and assures "that
personal jurisdiction is not premised solely upon a defendant's
'random, isolated, or fortuitous' contacts with the forum state."
Sawtelle, 70 F.3d at 1391 (quoting Keeton v. Hustler Magazine,
Inc., 465 U.S. 770, 774 (1984)).

The evidence shows that Caraustar developed an ongoing
relationship with Pesmel such that the defendant voluntarily and
purposefully availed itself of the benefits of conducting
business activities in Massachusetts.  The defendant knew it was
dealing with a Massachusetts company based on the address and
other contact information listed on the agreement and numerous
invoices which directed payment to be sent to Ashland,
Massachusetts.  See EIQnetworks, 2010 WL 2989997, at *7.  The
contractual relationship between the parties was intended to last
for several years; at the time the contract was "terminated," the
parties had dealt with each other for over 14 months already.

Moreover, the Agreement required frequent communications,

-10-

especially where the related consignment program was ongoing on a
monthly basis.  The defendant also directed its communications,
including phone calls, faxes and letters, to Massachusetts.  The
defendant's alleged refusal to make the contractually required
payments caused foreseeable injuries to the company in
Massachusetts, <u>see</u> <u>Burger King</u>, 471 U.S. at 480, and the
defendant should have reasonably foreseen the possibility of
being haled into court in Massachusetts if litigation arose.

Although the Agreement does not contain a forum selection
clause, the defendant could have taken steps to avoid defending a
claim in Massachusetts, such as negotiating a forum selection
clause or simply declining to conduct business with a
Massachusetts company.  <u>U.S. Plastics, Inc.</u> v. <u>Video Update,
Inc.</u>, 2000 WL 1099540, at *3 (Mass. Super. July 26, 2000).

### c.   Reasonableness

In evaluating reasonableness, the Court considers a series
of "Gestalt factors," including: 1) the defendant's burden of
appearing, 2) the forum state's interest in adjudicating the
dispute, 3) the plaintiff's interest in obtaining convenient and
effective relief, 4) the judicial system's interest in obtaining
the most effective resolution of the controversy and 5) the
common interests of all sovereigns in promoting substantive
social policies.  <u>Burger King</u>, 471 U.S. at 477.  The
reasonableness inquiry operates on a sliding scale with the first

two factors of the tripartite analysis, such that a particularly strong showing of relatedness and purposeful availment reduces the plaintiff's burden of demonstrating reasonableness. Sawtelle, 70 F.3d at 1394.

Here, the Gestalt factors indicate, albeit not particularly strongly, that the exercise of jurisdiction in Massachusetts would be reasonable.  Although it will be less convenient for the defendant to defend the case in Massachusetts, this factor is only significant when the defendant "can demonstrate some kind of special or unusual burden." Pritzker, 42 F.3d at 64.  Travel from Georgia to Massachusetts, however, is not considered a special or unusual burden.  See id. (finding travel between New York and Puerto Rico not a special or unusual burden).  In fact, the defendant has demonstrated its ability to travel, even overseas, when necessary, as well as to engage in remote communications.  See Scuderi Grp., LLC v. LGD Tech., LLC, 575 F. Supp. 2d 312, 323 (D. Mass. 2008).

With respect to the second factor, Massachusetts has an interest in adjudicating the dispute because it involves a Massachusetts company.  Under the third factor, the plaintiff has an interest in obtaining relief in Massachusetts, the forum in which it chose to bring the action.  As in most cases litigated among private litigants, the "interest of the judicial system in the effective administration of justice does not appear to cut in

either direction here." <u>Sawtelle</u>, 70 F.3d at 1395.  Finally, the dispute implicates social policy regarding the enforceability of contracts.

In sum, although it is a close question, the Court's exercise of personal jurisdiction over the defendant conforms to "traditional notions of fair play and substantial justice," and, as such, is statutorily and constitutionally permissible.

**B.    Whether Venue is Proper in Massachusetts**

Caraustar argues that this case should be dismissed for improper venue, although it fails to state any specific grounds in support of its argument.

Under 28 U.S.C. § 1391(a)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  In making that determination, the Court looks "not to a single triggering event prompting the action," but takes a "holistic view" of the "entire sequence of events underlying the claim." <u>Astro-Med</u>, 591 F.3d at 12.  For breach of contract claims, the Court considers a number of factors, including where the contract was negotiated or executed, where it was to be performed and where the alleged breach occurred.  <u>Largotta</u> v. <u>Banner Promotions, Inc.</u>, 356 F. Supp. 2d 388, 390 (S.D.N.Y. 2005).  The fact that substantial activities took place in other districts does not preclude a finding that venue is proper in Massachusetts.  <u>See</u> <u>id.</u>

-13-

Here, venue is proper based on the same factors relevant to the personal jurisdiction analysis: 1) the defendant faxed the Agreement to the plaintiff in Massachusetts for the plaintiff's signature, 2) the defendant repeatedly communicated by phone, mail and fax to the plaintiff in Massachusetts, 3) payments were made into Massachusetts, 4) there was an ongoing contractual relationship between the parties and 5) the contract was terminated through correspondence directed to Massachusetts.

### C.   Whether Transfer to Georgia is Warranted

In the alternative, Carauster contends that this Court should transfer the case to the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a), which states:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

As a threshold matter, the Court must first determine whether the case could have been brought in the district to which the defendant seeks to transfer it.  Trans Nat'l Travel, Inc. v. Sun Pac. Int'l, Inc., 10 F. Supp. 2d 79, 81 (D. Mass. 1998).  In an action where jurisdiction is based on diversity of citizenship, venue is proper under 28 U.S.C. § 1391 in "a judicial district where any defendant resides, if all defendants reside in the same State."  Venue is often appropriate in multiple districts and the Court's task is not to determine the

-14-

best venue but merely a suitable one.  <u>Astro-Med</u>, 591 F.3d at 12.

Here, federal jurisdiction, if any, is premised on the parties' diversity of citizenship.  Caraustar is the sole defendant and is a resident of both Ohio and Georgia for diversity purposes.  Thus, venue would be appropriate in the United States District Court for the Northern District of Georgia.

Once the Court determines the case "might have been brought" in the suggested transferee district, the Court must then determine whether transfer is warranted pursuant to 28 U.S.C. § 1404(a).  In making that determination, the Court considers several factors: 1) the relative convenience of the parties and witnesses, 2) the law to be applied and 3) the connection between the forum and the issues.  <u>Coady</u> v. <u>Ashcroft & Gerea</u>, 223 F.3d 1, 11 (1st Cir. 2000).  The most important factor is the convenience of the witnesses.  <u>Brandt Point Corp.</u> v. <u>Poetzsch</u>, 671 F. Supp. 2, 3 (D. Mass. 1987).  Although the decision to transfer a case under § 1404 lies solely in the discretion of the Court, there is a strong presumption in favor of the plaintiff's choice of forum and the burden of proof rests with the party seeking transfer. <u>Holmes Grp., Inc.</u> v. <u>Hamilton Beach/Proctor Silex, Inc.</u>, 249 F. Supp. 2d 12, 16 (D. Mass. 2002).

None of the relevant factors weighs heavily in favor of transfer.  The defendant asserts it would be more convenient to

litigate in Georgia, where its facility and witnesses (presumably its employees) are located.  The plaintiff's documents and witnesses, who are former employees and thus may be difficult to subpoena in Georgia, are located in Massachusetts.  Although it would be more convenient for the defendant to litigate in Georgia, transferring venue would merely shift the inconvenience to the plaintiff, resulting in a zero-sum game.  See Boateng v. Gen. Dynamics Corp., 460 F. Supp. 2d 270, 275 (D. Mass. 2006).

The defendant states that a trier of fact may need to travel to its facility in Georgia to inspect the equipment or view the work site because the machinery relevant to this dispute is permanently installed in that facility.  If a view of the machinery is truly necessary to resolution of this contractual dispute, it might well be accomplished by videotape or other such means.  See Fairview Mach. & Tool Co., Inc. v. Oakbrook Int'l, Inc., 56 F. Supp. 2d 134, 141 (D. Mass. 1999).

It is unclear what law governs the Agreement which has neither a forum selection clause nor a choice-of-law provision. The defendant argues it is "evident" that Georgia law applies to all the claims but the plaintiff believes the case "presumably" is governed by Article 2 of the Uniform Commercial Code which has been adopted by both states.  The parties also disagree on where the Agreement was executed.

Finally, both Georgia and Massachusetts are connected to the

issues.  Although the equipment was installed and delivered in Georgia, some parts were manufactured in Massachusetts and parts, tools and workers were prepared in Massachusetts before being sent to Georgia.

In sum, because the plaintiff's choice of forum weighs strongly against transfer and the other factors are neutral, the Court will not transfer venue.

### ORDER

In accordance with the foregoing, the defendant's Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, for Transfer of Venue (Docket No. 4) is **DENIED**.


**So ordered.**

  /s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated November 24, 2010